UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA M. QUINN,

    Plaintiff,

                                                                                                           Civil No. 07-11169
                                                                                                          Hon. John Feikens

    v.

VW CREDIT, INC. d/b/a
VOLKSWAGON CREDIT,
a foreign corporation,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Sheila Quinn (Quinn) has filed a three-count complaint alleging (1) age discrimination under the Age Discrimination in Employment Act (ADEA); and (2) age discrimination under Michigan's Elliott Larsen Act (ELCRA).[1] Defendant VW Credit brings a motion for summary judgment to dismiss the complaint. For the reasons stated below, I GRANT VW Credit's Motion for Summary Judgment and DISMISS this case.

**I.    FACTUAL BACKGROUND**

    **A.    Defendant VW Credit's Account of the Facts**

Volkswagon of America (VoA) hired Plaintiff Quinn in December 1998 as the personnel assistant for VoA's Head of Purchasing. Quinn was 51 years old when she

---

[1] The parties agreed on the record to dismiss Count II of the Complaint, which was an ERISA charge.

was hired. She stayed in that position for several years until VoA eliminated the position in 2003 as part of a work force reduction plan. Although Quinn could have been terminated at that time, VoA helped find her a position at VW Credit's Remarketing Department.[2] Quinn's responsibilities were chiefly clerical and included mailing out several hundred end-of-lease invoices each day.[3]

By August 4, 2006, Quinn had already scheduled her vacation days. She did not have any available on the date that is at issue in this case. The sick leave policy is clear that a worker has unlimited sick days but the worker must be sick in order to take a paid sick day. Personal days are also available. VW Credit's policies state that personal time is available "to handle a personal situation or to perform those functions you can't accomplish before or after the workday."

It is undisputed that Plaintiff and her husband are avid golf fans and that Plaintiff's husband had obtained tickets to the 2006 Buick Open in Warwick Hills, Michigan scheduled for August 4-6, 2006, three weeks prior to the event. It is also undisputed that on August 4, 2006, Quinn went to her supervisor, Robin Mason in the morning and told her she was feeling ill. Based on this reason, Quinn left work at noon that day.

---

[2] The Remarketing Department was responsible for ending lease agreement with Volkswagon customers. Those responsibilities included preparing and mailing final invoices, handling any issues that arose during the ending of a lease, and working with auto auctions to dispose of formerly leased automobiles.

[3] Quinn's immediate supervisor was Robin Mason; Mason reported to Mark Kruckeberg who was Manager; Kruckeberg reported to Linda Booms who was General Manager of the Remarketing Department. Mason was in her early 40's and Kruckeberg was in his early 30's when the events in this case occurred.

That evening several VW Credit managers, including Quinn's immediate supervisors, Robin Mason and Mark Kruckeberg, met at the Red Ox Restaurant to discuss workflow issues in the office. The meeting started at around 4:00 P.M. and lasted until 6:00 P.M. Sometime between 4:00 and 5:30, Kruckeberg and Mason saw Quinn on television, asking a pro golfer for an autograph. The evidence shows that Quinn's home is 9 miles (a 20-25 minute drive) from her job site; it is another 38 miles (30-45 minute drive) from Quinn's home to the Warwick Hills golf course. When she was seen on television, Quinn was at the 13th hole in the center of the golf course. Quinn then came in on Saturday, August 5 and worked six hours of overtime.

On Monday, August 7, Kruckeberg and Mason confronted Quinn, telling her that they had seen her on television at the golf tournament. Quinn maintained she was sick, but explained that after taking a nap, her husband asked if she wanted to go out to the tournament. There is conflicting evidence regarding when Plaintiff left her home to go to the tournament. The possible times include 2:30 P.M., 3:00 P.M., and 3:30 P.M.

Mason and Kruckeberg did not believe Quinn's story, in part because it was a stretch to believe that she could have gone to her home, napped, and then driven out to Warrick Hills in time for the golf tournament, and in part because Quinn gave varying times for when she left her home for the golf tournament.[4] Mason and Kruckeberg

---

[4]VW Credit points out that there was more than an hour of driving involved in Quinn going home and then going to Warrick Hills; and that Quinn and her husband would then have to park, enter the golf course, and make their way to the 13th hole of the course.

conferred with Kruckeberg's supervisor, Linda Booms and VW Credit's Human Resources Department. Each agreed that Quinn's story was suspect and that she should be terminated for lying about being sick. Quinn was terminated on August 9, 2006.

**B.**    **Plaintiff Quinn's Account of the Facts**

Quinn begins by noting that her employment with VoA and VW Credit was spotless, not one written warning or disciplinary action on her record. As significant, in more than 7½ years of employment with VW, Quinn had taken only eight days of sick leave, even though she understood the company's policies to state that sick leave was unlimited and that the only requirement for taking sick leave was to ask permission from a supervisor.

Regarding her illness on August 4, Quinn cites stress induced by a new time measurement system that gauged the daily work output of individual employees. Quinn says she complained to several people that the stress was causing her severe stomach cramps.[5] On August 4, Quinn complained that she was sick and left around noon that day. It took her 20 minutes to drive home; she then napped until 2:30 P.M. When she woke up, Quinn states that her husband asked her if she wanted to go to the Buick Open. Although Quinn says she did not feel "100%," she agreed to go, arriving at the golf course around 4:15 P.M. By 5:15 P.M., Quinn states that she was in line for

---

[5]The only testimony confirming this assertion comes from Quinn and her husband.

autographs and that after she received a couple autographs, she and her husband went home. Quinn admits that this was caught on television and that her supervisors saw her while they were meeting at the Red Ox Restaurant.

Quinn recalls that on Monday, August 7, she was called into a conference with Mason, and Kruckeberg. Quinn confirmed she was sick the previous Friday and stated she had gone home for a nap. After napping, she felt better and attended the Buick Open with her husband. When asked why she did not return to work, Quinn explained that she felt it was too late in the day and that returning to work would have resulted in one hour of work. To Quinn, that was pointless since she was scheduled to go to work the next day.

On August 9, Kruckeberg, Mason and a VW Credit human resources official, Stephen Stevens, met with Quinn and terminated her because the company believed she had lied about being sick and that she could no longer be trusted. A few days later, Quinn says she spoke with a VW Credit Vice President who apologized for what had happened but said that it was fine because Quinn would have been retiring soon. This shocked Quinn since she had no plans to retire. Quinn was replaced by a 37-year old woman who was hired from within VW Credit.

## II. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would

affect the application of governing law to the rights and obligations of the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The movant's burden is satisfied where there is an absence of evidence to support the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## III. ANALYSIS

In age discrimination cases, the law prescribes a classic McDonnell Douglas burden shifting analysis. First, Plaintiff must establish a prima facie case that: (1) Plaintiff is a member of a protected group; (2) Plaintiff was discharged; (3) Plaintiff was satisfactorily performing her job; and (4) Plaintiff was replaced by a younger person. Talley v. Bravo Petino Rest., Inc., 61 F.3d 1241 (6th Cir. 1995). Once Defendant proffers a legitimate reason for dismissal, Plaintiff must show the explanation was a pretext for age discrimination. Manzer v. Diamond Shamrock Chems., 29 F.3d 1078, 1082 (6th Cir. 1994). Plaintiff can prove pretext by showing directly or indirectly that the proffered reason: (1) has no basis in fact; (2) did not actually motivate Defendant's challenged action; or (3) was insufficient to warrant the challenged action. Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003).

### A. Prima Facie Case Established

Defendant concedes there is a prima facie case of age discrimination.

**B.     Defendant's Legitimate Non-discriminatory Reason for Discharging Plaintiff**

Plaintiff Quinn was terminated because Defendant believed Quinn lied about being sick so she could have a paid day off to see the Buick Open.

**C.     Defendant's Reason was not Pretextual**

This matter boils down to VW Credit's decision to fire Quinn because it believed she lied to them about being sick so she could go to a golf tournament without taking a vacation day to do so.  Plaintiff must prove by at least a preponderance of the evidence that this reason (1) has no basis in fact; (2) did not actually motivate Defendant's actions; or (3) was insufficient to warrant the challenged action.  Wexler, 317 F.3d at 574.  To do so, Quinn must provide evidence that the employer's actions are more likely than not based on the consideration of impermissible factors.  Texas Dep't of Comm. Affairs v. Burdin, 450 U.S. 248, 253 (1981).

It is clear to me that Defendant had a legitimate reason for firing Quinn: she said she was sick but then was seen at a golf tournament that was more than forty miles from her home.  She was not only caught with her hand in the proverbial cookie jar, but unfortunately for her, she was caught on national television.  Although I believe the evidence clearly shows Quinn lied to her employers, that is immaterial.   What is material is the fact that employers have the right to make personnel decisions based on the information at their disposal.  See  Comiskey v. Automotive Industries Action

Group, 40 F.Supp.2d 877, 897 (E.D. Mich. 1997) (Rosen, J.)( it is "the employer's prerogative to determine what behavior it will allow and behavior it will deem unacceptable, as well as to determine what punishment it believes is appropriate."); see also Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir. 1986) (court refused to second guess an employer's decision to fire a pilot for failing to use a required checklist).  In other words, the court does not review legitimate business decisions, especially one such as this where the facts indicate at least a reasonable suspicion that Quinn lied to her superiors at VW Credit.

It is Plaintiff Quinn's responsibility to show this court that there is a material issue of fact in dispute that would indicate other, improper motives influenced the decision to fire Quinn.  Plaintiff fails to do so.

First, Quinn's counsel asks this court to revisit VW Credit's decision that she lied about her illness.  However, counsel does so without one iota of proof that she was sick: i.e. no medical records, no affidavits or deposition testimony from doctors, and no testimony from co-workers confirming her assertion that she was previously suffering from stress.  Second, Plaintiff Quinn asserts that her superiors were younger than her;[6] therefore, there is an inference that Quinn's firing was based on age discrimination. This is nothing more than a glib argument that has no basis in the law.

Finally, Plaintiff attempts to suggest that the reasons for firing Quinn were

---

[6]Kruckeberg was in his early thirties; Mason was in her early forties, which the court notes is within Plaintiff's protected class.

insufficient because Defendant acted differently in comparable situations. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). After reviewing the evidence, the situations are hardly comparable. D'Nita White was fired after a history of unexcused absences and abusing an employee benefit of using a VW Credit company car. However, she was never caught in the act of lying. The difference lies in what Defendant was able to immediately observe. Whereas in D'Nita White's case, Defendant had to build up evidence of deceit, Plaintiff's case presented evidence of deceit immediately, on a television screen. In a second comparable, Andrew Szymel was fired for stealing gasoline from a VW Credit garage area. Plaintiff Quinn complains that Szymel was given an opportunity to explain himself but the facts are clear that Quinn also was given an opportunity to explain herself.[7] Overall, Quinn's termination differs from the terminations of White and Szymel because Quinn's deception was out there for public consumption, as opposed to White and Szymel whose actions were seen by a limited few.

The bottom line is that Plaintiff fails to introduce evidence, circumstantial or otherwise, that there was any animus toward her because of age. The record is devoid of previous instances or comments that indicate Defendant discriminated against employees because of their age. Instead, it is very evident that Defendant's decision to

---

[7]Quinn also complains that Szymel was offered a chance to take a lie detector test but this occurred after he was fired. Further, the supervisor who did so was not involved in this case and apparently acted without authority in making that offer. Finally, the offer was made in Illinois where state law allows such an offer; Michigan law does not allow employers to offer their employees polygraph tests.

fire Quinn was motivated by the fact that her supervisors caught her at a golf tournament hours after she left work sick, which she claims came after a couple weeks of stress related stomach pain. As such, I find that Plaintiff Quinn is unable to prove that there is a material fact in dispute that would allow her to meet her burden on pretext.

One final matter remains. Plaintiff Quinn presented to this Court an argument regarding spoliation of evidence. The Court need not address this argument because it is clear that Quinn has presented little, if any, evidence that could defeat summary judgment. In any event, the evidence that was allegedly destroyed is de minimis and would not have defeated summary judgment.

For these reasons, I GRANT Defendant VW Credit's Motion for Summary Judgment and DISMISS this case.

**IT IS SO ORDERED.**

Date:  March 26, 2008  s/John Feikens
United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on March 26, 2008, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager